UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SHELISE COLON and LAWRENCE BARRETT,

                                        Plaintiffs,

                    v.

CITY OF ROCHESTER, a municipal entity, et al.,

                                        Defendants.
_____

DECISION AND ORDER

17-CV-6160L

Plaintiffs Shelise Colon and Lawrence Barrett bring this action against the City of

Rochester, New York ("City") and several individuals employed by the Rochester Police

Department ("RPD"). Plaintiffs have brought seventeen causes of action against defendants,

under federal and state law, arising out of an incident that occurred in Rochester on December

16, 2015. Defendants have moved to dismiss the complaint pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure.


**BACKGROUND**

The complaint alleges that on December 16, 2015, at around noon, plaintiffs went to the

Transit Center on St. Paul Street in Rochester to catch a bus.[1]  Since the bus was not due to

depart for about 45 minutes, plaintiffs stopped at a nearby convenience store, and Barrett bought

a cigar.

_____

[1] In different places, the complaint gives the date as December 16 and as December 17.  *See*, *e.g.*,
Complaint ¶¶ 2, 31.  It appears from some of the papers that the correct date is December 16, but for the purposes of
this Decision and Order, the exact date is inconsequential.

Plaintiffs then stood outside a building at 36 St. Paul Street, while Barrett smoked his cigar. Shortly thereafter, a police cruiser drove up and parked on St. Paul Street, about 15 to 20 feet away from plaintiffs.

In the front seat of the police cruiser were RPD officers William Baker and Jason Kelly. After several minutes, Baker and Kelly yelled out the window of the car to plaintiffs and told them to "move along." Complaint ¶ 38.

Plaintiffs allege that they began to walk toward the Transit Center, but Baker and Kelly got out of their car and rushed toward plaintiffs. Baker allegedly grabbed Barrett from behind, slammed him against the wall of a building, and yelled, "Where do you think you are going?" Complaint ¶ 41. When Colon asked why she and Barrett were being stopped, Baker responded that the officers did not have to explain their actions, and one of the officers grabbed Colon's arm and threw her to the side.

Officer Baker then ordered Barrett to produce identification. Barrett began to reach toward his pocket to do so, but Baker unholstered his taser and ordered Barrett to put his hands over his head. Barrett did so.

At that point, Colon took out her cell phone and began to make a video recording of what was happening. Several more times, the officers allegedly told Barrett to produce his identification, and each time, as Barrett reached toward his pocket, the officers threatened to "tase" him. Colon told the officers that she was recording the incident on her phone, and they told her to leave the area. When she refused, Baker ran over, grabbed Colon, and twisted her arm, in an effort to get her to stop recording these events.

At about this time, a second police car arrived, containing RPD officers Orlando Hernandez and Braddon Elliott. They rushed to assist Baker and Kelly. Hernandez forcibly took Colon's cell phone from her, and he and Elliott put Colon in handcuffs. Barrett was placed in the rear of Baker's and Kelly's vehicle, and Colon was put into Hernandez's and Elliott's vehicle.

RPD Sergeant Mandi E. Wheeler next arrived at the scene. After speaking with the officers and with the plaintiffs, Sgt. Wheeler "approved" plaintiffs' arrests. Complaint ¶ 71. Wheeler allegedly told plaintiffs that they were being arrested for trespass. She also said that Baker and Kelly had initially stopped plaintiffs because Barrett "fit the description" of a wanted suspect. Complaint ¶ 72.

After plaintiffs' arrest, the officers obtained a signed statement from the owner of the building at 36 St. Paul Street, Taib El Kettani, stating in sum and substance that he had not given plaintiffs permission to loiter outside his building and that he wanted them prosecuted for trespassing. Plaintiffs allege that RPD officers routinely obtain such statements from property owners to support unjustified arrests for loitering, trespass, disorderly conduct, etc. Complaint ¶ 79.

Following plaintiffs' arrest, officers Hernandez and Elliott took Colon to Rochester General Hospital, where she was treated for injuries she allegedly sustained during her arrest. Officers Baker and Kelly took Barrett to the Monroe County Jail. He was arraigned the next day and charged with one count of trespass in violation of N.Y. Penal L. § 240.05. Plaintiffs allege that "[a]ll of the violation charges against Mr. Barrett have since been dismissed and sealed."

Complaint ¶ 115. The complaint does not allege whether any charges were brought against Colon following her arrest.

Based on these allegations, plaintiffs commenced this action in March 2017 against the City, Officers Baker, Kelly, Hernandez and Elliott ("Officers") and Sgt. Wheeler. Plaintiffs assert the following claims, all of which are brought by both plaintiffs unless otherwise noted: (1) a claim under 42 U.S.C. § 1983, alleging a variety of constitutional violations, including denial of due process, false arrest, excessive force, etc.; (2) a false arrest claim by Barrett against Baker and Kelly under § 1983; (3) a false arrest claim by Barrett against Baker, Kelly and the City under New York law; (4) an assault claim by Barrett against Baker and the City under New York law; (5) a battery claim by Barrett against Baker and the City under New York law; (6) an excessive force claim by Barrett against Baker under § 1983; (7) an assault claim by Colon against Baker and the City under New York law; (8) a battery claim by Colon against Baker and the City under New York law; (9) an excessive force claim by Colon against Baker under § 1983; (10) a claim alleging failure to intervene, by both plaintiffs against Kelly, under § 1983; (11) a claim alleging unlawful retaliation in violation of the First Amendment, by Colon against Baker under § 1983; (12) a negligence claim against the City; (13) a claim against the City alleging municipal liability for the officers' use of excessive force; (14) a municipal-liability claim against the City with respect to the officers' alleged use of false "cover" charges to punish so-called "contempt of cop"; (15) a claim against Baker, Kelly and Hernandez for denial of due process and the right to a fair trial, under § 1983; (16) a claim against Baker, Kelly, Hernandez, Elliott and Wheeler for conspiracy, under 42 U.S.C. § 1985(3); and (17) a claim of supervisory

liability against the City and Wheeler under § 1983.[2]  Plaintiffs seek an unspecified amount of compensatory and punitive damages, "appropriate declaratory and injunctive relief," and attorney's fees and costs.

## DISCUSSION

### I.  Defendants' Motion

In support of their motion to dismiss, defendants assert that:  (1) the individual officers are entitled to qualified immunity; (2) plaintiffs have not pleaded a viable conspiracy claim; (3) plaintiffs' false arrest, false imprisonment and malicious prosecution claims must be dismissed because plaintiffs have not alleged that they received a favorable disposition of their criminal charges; (4) plaintiffs have failed to allege facts supporting a claim of municipal liability under *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978), or a claim of supervisory liability; (5) plaintiffs have failed to allege facts supporting a claim of excessive force; (6) the assault and battery claims are duplicative of the excessive force claim; (7) plaintiffs' negligence claim and their intentional tort claims are mutually exclusive; and (8) plaintiffs have failed to allege facts showing that they engaged in any speech or conduct protected by the First Amendment, as required for a retaliation claim.

---

[2] Through an apparent oversight, the seventeenth claim is denominated in the complaint as the "Eighteenth Claim for Relief."  (Dkt. #1 at 65.)

## II.  Matters Outside the Pleadings

In response to defendants' motion, plaintiffs argue that defendants have improperly submitted and asked the Court to consider materials outside the pleadings.  Specifically, in support of their motion, defendants have submitted copies of an information/complaint and a supporting deposition signed by Taib El Kettani on December 16, 2015, as well as some RPD reports made in connection with plaintiffs' arrest.  Those include a Prisoner Data Report concerning Colon, two Investigative Action Reports, and an Incident Report.  Some of those documents contain a narrative of events as described by Hernandez, Kelly and Baker.

"On a motion to dismiss, the court's consideration generally is limited to the four corners of the complaint ... ."  *Hopkins v. Booth*, No. 16-CV-1020, 2019 WL 2422615, at *3 (W.D.N.Y. Feb. 20, 2019).  But as the Court of Appeals for the Second Circuit has stated, "[a] complaint is ... deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint."  *Sierra Club v. Con-Strux, LLC*, 911 F.3d 85, 88 (2d Cir. 2018) (quoting *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011)).  *Accord Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).

The complaint in this case not only cites El Kettani's supporting deposition and information/complaint, but quotes the deposition at some length.  *See* Complaint ¶ 79.  For that matter, an integral part of plaintiffs' claims is their allegation that RPD officers routinely draft depositions and similar papers, often containing false statements, to provide "cover" for their unlawful arrests, for which they then procure signatures by ostensible complainants.  The Court will therefore consider El Kettani's supporting deposition and information/complaint.

Plaintiffs also allege in the complaint that the Officers "falsified their account" of the events "in official police paperwork ... ." Complaint ¶¶ 92-94. Again, they allege that this was done pursuant to a "continuing custom or practice" of the RPD. *Id.*

In light of those allegations, the Court will consider the RPD documents that defendants have submitted, which were originally filed in connection with plaintiffs' arrests. That does not mean that the Court will accept the truth of the statements contained therein, but the Court will consider the fact that they were filed, and that they contain certain statements. *See Feinberg v. T. Rowe Price Group, Inc.*, No. 17-0427, 2018 WL 3970470, at *3-*4 (D.Md. Aug. 20, 2018) (taking judicial notice of documents attached to the complaint, but not considering them for the truth of the statements contained in those documents); *In re Lehman Bros. Securities and ERISA Litigation*, 903 F.Supp.2d 152, 168-69 (S.D.N.Y. 2012) ("a document that is integral to a complaint in the sense that the plaintiff had actual notice of and relied upon it in framing the complaint, is properly considered, albeit not for the truth of the matters asserted, notwithstanding that it has not been attached to or incorporated by reference into the complaint") (footnotes and citations omitted).

## III. Conspiracy

In their sixteenth cause of action, which is brought pursuant to 42 U.S.C. §§ 1983 and 1985(3), plaintiffs allege that the Officers and Wheeler conspired with each other to deprive plaintiffs of their rights. To establish such a claim, plaintiffs must show "(1) an agreement between two or more state actors or between a state actor and a private entity, (2) to act in

concert to inflict an unconstitutional injury, and (3) an overt act done in furtherance of that goal, causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999).

Defendants contend that this claim should be dismissed pursuant to the "intracorporate conspiracy doctrine." Under that doctrine, "officers, agents and employees of a single corporate entity are legally incapable of conspiring together." *Sherman v. City of New York*, No. 18-cv-5359, 2019 WL 2164081, at *7 (E.D.N.Y. May 16, 2019) (internal quotes omitted).

The Court agrees with defendants that this claim is barred by the intracorporate conspiracy doctrine. Although there is an exception to the general rule "where the individual defendants, despite being a part of the same entity, are pursuing personal interests wholly separate and apart from the entity," *Ivery v. Baldauf*, 284 F.Supp.3d 426, 440 (W.D.N.Y. 2018) (internal quotes omitted), that is a "narrow exception" that does not apply here. *McRae v. City of Hudson*, No. 14-CV-236, 2015 WL 275867, at *8 (N.D.N.Y. Jan. 21, 2015). The complaint plainly alleges that defendants were acting within the scope of their employment, and plaintiffs have not alleged any facts indicating that any of the individual defendants were acting out of purely personal motives.

In their response to defendants' motion, plaintiffs simply repeat their allegations that defendants conspired with each other. That conclusory allegation is insufficient to state a conspiracy claim against the individual defendants. *See Sherman*, 2019 WL 2164081, at *7 (dismissing claim against individual NYPD officers where plaintiff did "not explain the nature of [the officers'] personal interests, and his claim that the individual officers made an agreement amongst themselves to violate plaintiff's rights [wa]s strictly conclusory"); *Ali v. Connick*, 136 F. Supp. 3d 270, 282-83 (E.D.N.Y. 2015) (observing that "[a] conspiracy claim must contain

more than conclusory, vague or general allegations," and that the exception to the intracorporate conspiracy doctrine requires a reasonable basis for believing that the officers "acted in their own interest and outside the normal course of their duties") (quotation marks and citation omitted)).

## IV. False Arrest

In the second and third causes of action, Barrett asserts claims of false arrest against Baker and Kelly under § 1983, and against Baker, Kelly and the City under New York law, respectively. Defendants contend that these claims must be dismissed because plaintiffs have not alleged that Barrett received a favorable disposition of the charges against him.[3]

The elements of a false arrest claim are the same under New York law and § 1983. *See Simpson v. City of New York*, 793 F.3d 259, 265 (2d Cir. 2015); *see also Saving v. City of New York*, 331 F.3d 63, 75 (2d Cir. 2003) ("liability for false arrest [under state law] also gives rise to liability under 42 U.S.C. § 1983"). To state such a claim, a plaintiff must allege that: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. *See Hernandez v. United States*, 939 F.3d 191, 199 (2d Cir. 2019); *Parker v. Blackerby*, 368 F.Supp.3d 611, 621 (W.D.N.Y. 2019).

There is case law from this circuit that, on the surface, might appear contradictory about whether a plaintiff asserting a false arrest claim must allege or prove that the underlying criminal

---

[3] In their memorandum of law, defendants assert that plaintiffs' claims for false arrest, false imprisonment and malicious prosecution must be dismissed because "[p]laintiffs have not alleged that they received a favorable termination of their criminal charges."

Plaintiffs have not asserted a claim of malicious prosecution, nor have they alleged that any criminal charges were brought against Colon. It is not apparent why defendants refer to either of those.

proceedings terminated in his favor. The Court of Appeals for the Second Circuit has stated that "under New York law, while the favorable termination of judicial proceedings is an element of a claim for malicious prosecution, it is not an element of a claim for false arrest." *Weyant v. Okst*, 101 F.3d 845, 853 (2d Cir. 1996) (citations omitted). Yet the court has also stated that "[a] false arrest claim is defeated by the plaintiff's conviction for the offense for which he was arrested." *Phelan v. Sullivan*, 541 Fed.Appx. 21, 23 (2d Cir. 2013).

A closer examination of the case law shows that there is no inconsistency. Where the plaintiff has been convicted of at least one offense for which he was arrested, that conviction will generally "foreclose[] a false arrest claim by serving as conclusive evidence of probable cause to arrest." *Bennett v. N.Y.C. Police Dep't Transit Dist.*, No. 19-CV-0403, 2019 WL 1595845, at *2 (S.D.N.Y. Apr. 12, 2019) (citing *Posr v. Court Officer Shield # 207*, 180 F.3d 409, 414 (2d Cir. 1999), and *Weyant*, 101 F.3d at 852).

The court in *Weyant* did not hold to the contrary. In the context of the facts before it, the Court of Appeals simply stated that a plaintiff who asserts a claim of false arrest need not have insisted that he be criminally prosecuted following the arrest, or, if a prosecution was brought against him, that he have pursued the case to an acquittal or unqualified dismissal, in order to preserve a later false arrest claim. 101 F.3d at 853-54. In *Weyant*, though the plaintiff was convicted, later proceedings rendered that conviction a "nullity" and the criminal proceedings against him "entirely void." *Id.* at 853. The court concluded that under those circumstances, the fact that the criminal proceedings did not yield a result affirmatively indicating the plaintiff's innocence did not bar his federal false arrest claim.

In addition, the favorable-termination principle stems from the Supreme Court's holding in *Heck v. Humphrey*, 512 U.S. 477 (1994), that absent a favorable termination of criminal proceedings, a plaintiff may not seek damages on a civil rights claim where success on the claim "would necessarily imply that the plaintiff's criminal conviction was wrongful."  *Id.* at 486 n.6. The Second Circuit has held, though, that in some circumstances success on a false arrest claim would not necessarily imply the invalidity of a conviction resulting from the criminal proceedings instituted against the plaintiff based on the arrest.  *Covington v. City of New York*, 171 F.3d 117, 123 (2d Cir. 1999) (remanding to district court to make a determination in that regard).

In the case at bar, plaintiffs allege that "[a]ll of the violation charges against Mr. Barrett have ... been dismissed and sealed."  Complaint ¶ 115.  Plaintiffs do not state what the basis or reason was for the dismissal of the charges.

In their memorandum of law, defendants state that plaintiffs "were either convicted or pled guilty to an ACD," *i.e.*, adjournment in contemplation of dismissal (Dkt. #4-6 at 5).  That is an odd statement, since (1) defendants presumably would be in a position to know what the disposition was of whatever charges were brought against plaintiffs, and (2) one cannot "plead guilty" to an ACD, since "[u]nlike a conviction, an ACD leaves open the question of guilt, and does not bar [a plaintiff] from pursuing [a] false arrest claim."  *Ivery*, 284 F.Supp.3d at 436 (citing *Case v. City of New York*, 233 F.Supp.3d 372, 383 (S.D.N.Y. 2017)).  *See also MacNamara v. City of New York*, 275 F.R.D. 125, 147 (S.D.N.Y. 2011) (acceptance of an ACD does not bar plaintiffs from pursuing false arrest claims).

On this motion to dismiss, the Court cannot make a determination in that regard. The Court is limited to what is alleged or incorporated by reference in the complaint. Furthermore, even if the Court could consider defendants' assertions, they are unhelpful. Defendants have stated, in effect, that either one thing *or* the other happened, evidence of neither of which appears in the complaint, or for that matter, anywhere else in the record. It is difficult to understand how defendants think the Court could dismiss these claims on that basis.

As stated, defendants have also submitted copies of El Kettani's supporting deposition and information/complaint, both of which are dated December 16, 2015. In the deposition, El Kettani states that at around 2:00 p.m. on that date, he "was contacted by Rochester Police Dept. regarding people trespassing on [his] property ... ." He states that he had experienced ongoing problems with people loitering outside his building, and that he was "very thankful" for the RPD's help in dealing with that problem. (Dkt. #4-3.) In the information/complaint (Dkt. #4-4), El Kettani states that on December 16, 2015, plaintiffs were on his premises without his permission, and blocking the entrance to his building. But he does not state that he actually saw them outside the building, or that he had any direct knowledge of the events leading to plaintiffs' arrest.

There is authority that an arresting officer is entitled to rely on an alleged victim's complaint, absent circumstances raising doubts as to the victim's veracity. *See*, *e.g.*, *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995) (deputy was entitled to rely on store clerk's statement that clerk saw plaintiff steal items from the store); *Cole v. County of Suffolk*, No. CV 15-5550, 2018 WL 4346718, at *2-*3 (E.D.N.Y. Aug. 7, 2018) (officer reasonably relied on complainant's statement that plaintiff had become violent and attempted to prevent her from

contacting the authorities). But that assumes that the victim made an accusation *prior* to the arrest.

Neither the complaint, nor any materials the Court may consider on the present motion, suggest that such occurred here. In his supporting deposition, El Kettani states that RPD contacted *him* about an alleged trespass. That jibes with plaintiffs' allegation that after plaintiffs' arrest, the officers drafted a supporting deposition and complaint and presented them to El Kettani for his signature, in order to justify, *post hoc*, their arrest of plaintiffs. *Cf. Nansaram v. City of New York*, No. 12-CV-5038, 2015 WL 5475496, at *9 (E.D.N.Y. July 2, 2015) ("an arresting officer may consider the victim's willingness to make a sworn statement or official report in support of her allegations *as corroboration of her initial allegations*") (citing *Panetta v. Crowley*, 460 F.3d 388, 397 (2d Cir.2006)) (emphasis added).

In short, there is no basis upon which the Court can dismiss the false arrest claims. Defendants do not appear to contend that the allegations of the complaint are deficient (other than with respect to the outcome of any charges that were brought against plaintiffs, as discussed above), and assuming the truth of plaintiffs' factual allegations, as I must at this stage, the Court cannot find as a matter of law that the Officers had probable cause to arrest plaintiffs. According to plaintiffs, they were simply standing on a sidewalk, not far from the bus station, when Baker and Kelly told them to move along. When plaintiffs started walking away, the officers ran over and arrested them. Those allegations state a facially sufficient claim of false arrest as to Baker and Kelly.[4] *See Guntlow v. Barbera*, 76 A.D.3d 760, 764 (2010) (summary judgment should not have been granted for defendants on plaintiff's claim of false arrest where "the parties' sharply

---

[4] Plaintiffs' various claims against the City are addressed later in this Decision and Order.

divergent accounts of the arrest created questions of fact regarding the existence of probable cause").

Defendants also contend that the officers are entitled to qualified immunity. Qualified immunity shields public officials, including police officers, from an action for civil damages, to the extent that their challenged acts do not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). *Accord Kisela v. Hughes*, 584 U.S. __, 138 S.Ct. 1148, 1152 (2018) (per curiam).

Whether defendants are entitled to qualified immunity can sometimes be determined on a motion to dismiss. *See Garcia v. Does*, 779 F.3d 84, 97 (2d Cir. 2015). But that is more the exception than the rule. *See Collins v. Ferguson*, 804 F.Supp.134, 140-41 (W.D.N.Y. 2011) (stating that because the qualified-immunity defense necessarily involves a fact-specific inquiry, "it is generally premature to address the defense of qualified immunity in a motion to dismiss") (internal quote omitted). Construing the allegations in the light most favorable to plaintiffs, I conclude that dismissal is inappropriate here.

As stated, the facts alleged in the complaint, if accepted as true, show that Baker and Kelly charged out of their police car and arrested plaintiffs, who were doing nothing more than standing on a public sidewalk. Perhaps the arrests were justified, or the officers may reasonably have believed them to have been justified. But the Court cannot make a determination in that regard on a motion to dismiss. *See Guntlow*, 76 A.D.3d at 766 (denying defendants' motion for summary judgment under the doctrine of qualified immunity inasmuch as defendants failed to establish as a matter of law that it was objectively reasonable for them to believe that their

14

conduct was appropriate, or that officers of reasonable competence could disagree as to whether their conduct was proper).  Defendants' motion to dismiss these claims is therefore denied.

## V.  Excessive Force, Assault, and Battery

Plaintiffs have asserted claims of excessive force in violation of federal law, and claims of assault and battery in violation of New York law.  Defendants contend that these claims should be dismissed because plaintiffs have not alleged facts showing that the officers used an unreasonable amount of force.

The standard for assessing a claim of excessive force under § 1983 is one of "objective reasonableness."  *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010).  Three primary considerations guide the Court's application of the standard:  (1) the nature and severity of the crime precipitating the arrest; (2) whether the suspect posed an immediate threat to the safety of the officer or others; and (3) whether the suspect was actively resisting arrest or attempting to flee.  *Brown v. City of New York*, 798 F.3d 94, 100 (2d Cir. 2015) (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

"Federal excessive force claims and state law assault and battery claims against police officers are nearly identical."  *Graham v. City of New York*, 928 F.Supp.2d 610, 624 (E.D.N.Y. 2013) (citing *Humphrey v. Landers*, 344 Fed.Appx. 686, 688 (2d Cir. 2009)).  The only significant difference relates to the existence of probable cause for the underlying arrest.

Whether probable cause for the arrest existed is not dispositive of a Fourth Amendment excessive force claim.  *See County of Los Angeles v. Mendez*, 581 U.S. __, 137 S.Ct. 1539, 1547-48 (2017) ("Because the excessive force and false arrest factual inquiries are distinct,

establishing a lack of probable cause to make an arrest does not establish an excessive force claim, and vice-versa") (citation and internal quotation marks omitted); *Jones v. Parmley*, 465 F.3d 46, 62 (2d Cir. 2006) ("the reasonableness test ... remains the applicable test for determining when excessive force has been used, including those cases where officers allegedly lack probable cause to arrest").

Under New York law, however, the use of *any* force during the course of an unlawful arrest gives rise to assault and battery claims against the arresting officer.  See *Goonewardena v. Spinelli*, No. 15-CV-5239, 2017 WL 4280549, at *10 (E.D.N.Y.  Sept. 26, 2017) ("If an officer lacks probable cause for an arrest, any force used by the officer in effectuating the unlawful arrest constitutes assault and battery" under New York law); *accord Loftin v. City of New York*, No. 15-CV-5656, 2017 WL 3614437, at *7 (E.D.N.Y. Aug. 21, 2017) (collecting cases); *Rucks v. City of New York*, 96 F.Supp.3d 138, 153 (S.D.N.Y. 2015) ("where an arrest is unlawful and without consent, the use of force in an arrest must give rise to a claim for assault and battery" under New York law) (internal quotation marks omitted).

To recapitulate, accepting the truth of plaintiffs' allegations, they were standing on a public sidewalk when Officers Baker and Kelly told them to "move along."  As plaintiffs began to walk away, Baker and Kelly sprang out of their vehicle and ran toward plaintiffs.  Baker grabbed Barrett and pushed him against the wall of the adjacent building.  Baker demanded that Barrett produce identification, but every time Barrett reached to his pocket to do so, Baker threatened to "tase" him.

Colon began recording these events on her cell phone, and told the officers that she was doing so.  Baker ran over and grabbed her arm, and Hernandez, who had arrived in the

meantime, took the phone. Both plaintiffs were then handcuffed and put into police vehicles.[5] Barrett was taken to the local jail, and Colon was taken to a hospital, where she was attended to and later released.

As to the federal claims of excessive force, it is questionable whether the force alleged to have been used could fairly be characterized as excessive. But that cannot be determined on this motion to dismiss. Despite the relatively modest level of force alleged, the Court cannot determine now, as a matter of law, that the force used was *de minimis*, as would be required to support dismissal of these claims. *See Jackson v. Mastrangelo*, __ F.Supp.3d __, 2019 WL 4686456, at *3 (W.D.N.Y. 2019) ("for Fourth Amendment excessive force claims, '[i]t is the force used, not the injuries caused, which must be determined to be de minimis as a matter of law'") (quoting *Campbell v. City of New York*, No. 06-CV-5743, 2010 WL 2720589, at *8 (S.D.N.Y. June 30, 2010)); *Spencer v. Sullivan County*, No. 18-CV-365, 2019 WL 4514011, at *7 (S.D.N.Y. Sept. 19, 2019) ("the use of even de minimis force that serves no purpose is not objectively reasonable").

As explained above, plaintiffs have stated a facially valid claim for false arrest as to Barrett. They have not asserted a false arrest claim as to Colon, but they have alleged that she was arrested and that the force used against her was unwarranted. According to plaintiffs, all Colon did was record the incident on her phone, and the officers forcibly took her phone from her. If plaintiffs' allegations are true, then they have stated facially valid claims for assault and

---

[5] This is a somewhat simplified recitation of the events alleged in the complaint, which alleges at some points that Kelly "and/or" Baker, Hernandez and Elliott did certain things. Assuming the truth of plaintiffs' allegations, this appears to have been a relatively brief, chaotic and fluid event.

battery under New York law, since any use of force to effect an arrest without probable cause can give rise to a claim for assault and battery under New York law.

Defendants have asserted a qualified immunity defense on these claims as well. "The standard for determining whether police officers enjoy immunity for ... battery actions is the same under state law as it is under federal law." *Graham*, 928 F.Supp.2d at 625 (collecting cases). *See also Bancroft v. City of Mt. Vernon*, 672 F.Supp.2d 391, 401 (S.D.N.Y. 2009) ("[A]s is true of federal law, an officer's entitlement to qualified immunity under New York law depends on the reasonableness of his actions. The only difference between the federal and state doctrines is that the reasonableness of an officer's action is judged with references to state law and the state, not the federal, constitution"). Ultimately, the question is whether "officers of reasonable competence could disagree on the legality" of the force used. *Dancy v. McGinley*, 843 F.3d 93, 106 (2d Cir. 2016).

Since plaintiffs' claims of excessive force and assault and battery survive defendants' motion to dismiss, defendants' motion to dismiss based on qualified immunity must also be denied. Both a claim of excessive force and a qualified immunity defense to such a claim depend on whether or not the officer's actions were objectively reasonable. *See Jackson*, 2019 WL 4686456, at *4 ("Because the Court finds Plaintiff has adequately alleged Fourth Amendment claims against Defendants, Defendants' motion to dismiss on the basis of qualified immunity is denied"); *see also Spencer*, 2019 WL 4514011, at *7, n.5 ("To the extent [the defendant police officer] raised a qualified immunity defense with respect to this [excessive force] claim, dismissal on grounds of qualified immunity is inappropriate at this stage because in the context of excessive force, the Fourth Amendment reasonableness inquiry tends to converge

with the qualified immunity reasonableness inquiry") (internal quote omitted); *Wang v. Vahldieck*, No. 09-CV-3783, 2012 WL 119591, at *11 (stating that, having determined that plaintiff's claim for excessive force presented triable issues of fact, "the court likewise concludes that defendants are not entitled to summary judgment on the basis of qualified immunity") (citing *Cowan v. Breen*, 352 F.3d 756, 764 & n.7 (2d Cir. 2003)).[6]

## VI. Failure to Intervene

The tenth cause of action is asserted by both defendants against Kelly, alleging that Kelly had a duty to intervene on plaintiffs' behalf to prevent or stop Baker from violating plaintiffs' rights, and that Kelly failed to do so.

"[L]aw enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. 2014) (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) (collecting cases)). "A non-intervening police officer becomes liable when 'such failure permitted fellow officers to violate ... clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Berg v. Kelly*, 897 F.3d

---

[6] Given the Court's ruling in this regard, it is unnecessary for me to decide at this point whether Baker's alleged threats to "tase" Barrett could alone give rise to an excessive force claim, or whether defendants are entitled to qualified immunity in that regard. *See Hall v. McGhee*, 762 Fed.Appx. 837, 845 (11th Cir. 2019) (affirming summary judgment for defendant sheriff's deputy, on qualified-immunity grounds, on claim that deputy pressed a taser against plaintiffs' heads during execution of arrest warrant); *but see Merrill v. Schell*, 279 F.Supp.3d 438, 446 (W.D.N.Y. 2017) (stating that "the Second Circuit has never explicitly recognized an excessive force claim in the absence of physical contact," but denying motion to dismiss on grounds of qualified immunity where, under the particular facts presented, officer's alleged act of pointing a gun at plaintiff's head and threatening to shoot him "constituted gratuitous–and excessive–force").

99, 113 (2d Cir. 2018) (quoting *Ricciuti v. N.Y.C. Trans. Auth.*, 124 F.3d 123, 129 (2d Cir. 1997)).

An officer may be liable for the preventable harm caused by his failure to intervene during a constitutional violation where the officer "observes the [constitutional violation] and has sufficient time to act to prevent it." *Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016) (citation omitted). To state a claim for failure to intervene, a plaintiff must adequately plead that: (1) an officer other than the defendant used excessive force; (2) the defendant had a realistic opportunity to intervene and prevent the harm; (3) a reasonable person in the defendant's shoes would have known that the victim's constitutional rights were being violated; and (4) the defendant did not take reasonable steps to intervene. *Pierce v. City of New York*, 293 F.Supp.3d 306, 313 (E.D.N.Y. 2017).

While plaintiffs' allegations in support of this claim can fairly be described as thin, I find them sufficient at this stage to allow this claim to proceed. The allegations of the complaint describe a brief incident, involving a relatively small degree of force. But Kelly is alleged to have taken part, and assuming the truth of plaintiffs' allegations, the Court cannot rule as a matter of law that the failure-to-intervene claim as pleaded is facially inadequate.

I also deny Kelly's motion to dismiss this claim on the ground of qualified immunity. It is not clear at this point whether excessive force was used, and if so, whether Kelly could or should have intervened to prevent or stop it. *See Walker v. Schult*, 717 F.3d 119, 130 (2d Cir. 2013) (stating that "qualified immunity is often best decided on a motion for summary judgment when the details of the alleged deprivations are more fully developed"); *Falls v. Rude*, No. 17 CV 1339, 2019 WL 3156087, at *8 (S.D.N.Y. Aug. 7, 2019) (denying summary judgment for

defendants where issues of fact existed as to whether officers used excessive force or failed to intervene to prevent the use of excessive force); *Jackson*, 2019 WL 4686456, at *4 (denying motion to dismiss on ground of qualified immunity, in part because disposition of failure-to-intervene claim was contingent on disposition of underlying excessive force claim).

## VII. First Amendment Claim

In the eleventh cause of action, plaintiff Colon asserts a claim pursuant to § 1983 against Baker of unlawful retaliation under the First Amendment.  Specifically, plaintiffs allege that when Colon began recording the incident on her cell phone camera, Baker stopped what he was doing with Barrett, went over to Colon, grabbed her and attempted to forcibly take her cell phone from her, "to retaliate against her and to chill and deter her from further First Amendment protected activity."  Complaint ¶ 188.  In support of their motion to dismiss this claim, defendants argue that "[p]laintiffs had no right to resist arrest, whether or not they had a camera."  Def. Mem. (Dkt. #4-6) at 14.

As explained above, the facts are in dispute as to whether there was a lawful basis to arrest plaintiffs.  In any event, the allegation here is not that Baker's arrest of Colon incidentally prevented her from recording the incident, but that Baker assaulted her precisely because she was recording Barrett's arrest on her phone.

There is case authority that such allegations suffice to make out a First Amendment claim.  *See*, *e.g. McKenzie v. City of N.Y.*, No. 17 Civ. 4899, 2019 WL 3288267, at *7 (S.D.N.Y. July 22, 2019) ("although neither the Supreme Court nor the Second Circuit has had occasion to squarely so hold, every circuit to consider the question has concluded that the First Amendment

protects the right to record police officers performing their duties in a public space, subject to reasonable time, place and manner restrictions") (internal quotes and citations omitted); *Blakely v. Andrade*, 360 F.Supp.3d 453, 482 (N.D.Tex. 2019) (plaintiff's allegation that deputies prevented her from recording them during a traffic stop sufficiently stated a constitutional violation); *Hoeppner v. Billeb*, No. 17-cv-430, 2018 WL 5282898, at *11-*12 (W.D.Wisc. Oct. 24, 2018) (denying defendants' motion for summary judgment on plaintiff's First Amendment claim, where factual issues existed as to lawfulness of plaintiff's arrest and the circumstances surrounding officers' seizure of his cell phone).

Again, the Court must keep in mind that this is a motion to dismiss. Whether this claim survives discovery or trial remains to be seen. But construing the allegations of the complaint in the light most favorable to plaintiffs, I conclude that Colon has adequately stated a First Amendment claim.

## VIII. Municipal Liability

### A. State Law Claims

In Claims 3, 4, 5, 7, 8, 12, 13, 14 and 17, plaintiffs have asserted claims against the City, as well as against the individual defendants named in those counts, under New York law.

With respect to those claims, much of defendants' papers in support of their motion to dismiss is taken up by a discussion of so-called *Monell* liability, *see Monell v. Dep't of Social Services*, 436 U.S. 658 (1978). The Supreme Court in *Monell* held that to recover against a municipality under § 1983, a plaintiff may not rely on the doctrine of *respondeat superior*, but must allege and ultimately prove facts showing that the municipal defendant was responsible for

the constitutional deprivation at issue, in the sense that the deprivation may fairly be said to have resulted from an official custom or policy of the municipality. *See Kuder v. City of Rochester*, 992 F.Supp.2d 204, 212 (W.D.N.Y. 2014) (citing *Monell* and *Zembiec v. County of Monroe*, 766 F.Supp.2d 484, 492-96 (W.D.N.Y. 2011), *aff'd*, 468 Fed.Appx. 39 (2d Cir.2012)).

While *Monell* is relevant to plaintiffs' federal claims (as discussed below), it is not dispositive with respect to plaintiffs' state-law claims against the City.

First, it is obvious from the complaint that the Officers were acting in the scope of their employment. The law in New York is well established that a "New York [municipal] employer ... is liable for intentional torts, such as assault and battery, committed by its employees provided that the tort is committed within the scope of the plaintiff's employment." *Green v. City of New York*, 465 F.3d 65, 86 (2d Cir. 2006) (citing *Carnegie v. J.P. Phillips, Inc.*, 28 A.D.3d 599 (2d Dep't 2006)). *See also Graham v. City of N.Y.*, 928 F.Supp.2d 610, 626 (E.D.N.Y. 2013) ("New York courts have held municipalities liable under a theory of *respondeat superior* for false arrest and assault and battery claims") (collecting cases). *Accord Warr v. Liberatore*, 270 F.Supp.3d 653-54 (W.D.N.Y. 2017). *See also Lepore v. Town of Greenburgh*, 120 A.D.3d 1202, 1204 (2d Dep't 2014) ("Unlike cases commenced under 42 U.S.C. § 1983, municipalities may be liable, under the doctrine of respondeat superior, for the common law torts, such as false arrest, malicious prosecution, assault, and battery, committed by their employees"); *Rothman v. City of New York*, No. 19 Civ. 0225, 2019 WL 3571051, at *18 (S.D.N.Y. Aug. 5, 2019) (denying city's motion to dismiss assault and battery claims where city did not contend that police officers were acting outside the scope of their employment when they took the acts in question); *Greene v. City of New York*, No. 15-CV-6436, 2019 WL 3606739, at *17 (E.D.N.Y. Aug. 6, 2019)

(denying city's motion for summary judgment on assault and battery claims, where city did not assert that officers were acting outside the scope of their employment or that their actions were unforeseeable).

The City has conceded that the named officers were acting within the scope of their employment during the events in question, *see* Def. Mem. (Dkt. #4-6) at 10. Therefore, claims 3 (false arrest), 4, 5, 7 and 8 (assault and battery), all of which are based on New York law, and all of which survive against the individually named defendants, survive against the City as well.

Claim 12 is brought against the City under state law, alleging negligence with respect to the City's hiring, retention, training and supervision of its police officers. Plaintiffs also allege that the City was negligent in failing to discipline and take corrective action against Officers Baker and Kelly after their past acts of misconduct. Again, this claim is largely defeated by the fact that the Officers were clearly acting within the scope of their employment.

"To maintain a claim against a municipal employer for the negligent hiring, training and retention of a tortfeasor under New York law, a plaintiff must show that the employee acted outside the scope of [his or] her employment" when committing the tort. *Velez v. City of New York*, 730 F.3d 128, 136-37 (2d Cir. 2013) (internal quotation marks and citation omitted). *See also Marcinkowski v. City of Buffalo*, No. 14-CV-809, 2019 WL 3891002, at *11 (W.D.N.Y. Aug. 19, 2019) (stating with respect to a failure-to-train claim that "[i]f an employee acts within the scope of his employment, the employer and the employee's supervisors may be held liable for the employee's negligence only under a theory of *respondeat superior*," because "if the employee was not negligent, there is no basis for imposing liability on the employer, and if the

employee was negligent, the employer must pay the judgment regardless of the ... adequacy of the training'") (quoting *Karoon v. N.Y.C. Transit Auth.*, 241 A.D.2d 323 (1st Dep't 1997)).

As stated above, the City concedes that the officers were acting within the scope of their employment, and nothing before me indicates otherwise. An act falls within the scope of employment "if it is in furtherance of, or reasonably necessary or incidental to, the employer's business or interest." *Hamilton v. City of New York*, No. 15-CV-4574, 2019 WL 1452013, at *31 (E.D.N.Y. Mar. 19, 2019) (citation omitted). Whether the officers' actions were justified or not, they were plainly acting within the scope of their employment as RPD officers.

The Court's conclusion in this regard renders it unnecessary for me to address the elements of a failure-to-train claim, concerning whether the municipality knew or should have known of the employee's propensity to engage in the conduct causing the plaintiff's injury, etc. *See Marcinkowski*, 2019 WL 3861002, at *11. Even so, plaintiffs' twelfth cause of action simply recites in boilerplate form that the City knew or should have known that these officers were apt to commit violations of individuals' rights, such as those alleged here. Such conclusory allegations are not enough to state a claim. *See Maund v. County of Erie*, No. 17-CV-778, 2019 WL 955355, at *4 (W.D.N.Y. Feb. 26, 2019) (plaintiff's "threadbare allegation that the County knew or should have known that the two caseworkers lacked the appropriate temperament and psychological makeup is conclusory and insufficient to survive a motion to dismiss"), *appeal filed*, (19-3676, Dec. 5, 2019); *Cort v. Marshall's Dep't Store*, No. 14-CV-7385, 2015 WL 9582426, at *5, 2015 U.S. Dist. LEXIS 172611, at *13 (E.D.N.Y. Dec. 29, 2015) ("A conclusory allegation is not enough to state a claim for negligent hiring, retention, supervision, or training"); *Ahluwalia v. St. George's Univ., LLC*, 63 F.Supp.3d 251, 264 (E.D.N.Y. 2014) (allegations that

employees had the propensity to engage in illegal conduct and that such conduct fell outside the course and scope of their employment failed to set forth any facts plausibly supporting the threadbare allegation), *aff'd*, 626 Fed.Appx. 297 (2d Cir. 2015).  The twelfth cause of action against the City is therefore dismissed.


**B.  Federal Claims**

**1.  Use of  Excessive Force and "Cover" Charges**

In their thirteenth and fourteenth claims for relief, plaintiffs allege respectively that the City has maintained unconstitutional policies with respect to the use of excessive force in making arrests, and by permitting the RPD's use of "cover" charges to punish so-called "contempt of cop."  In support of the thirteenth claim, plaintiffs have set forth allegations about several RPD officers, none of whom were  involved in the incident giving rise to this suit, asserting that those officers have used excessive force and were never disciplined for their actions.  Complaint ¶¶ 218-51.

There is no bright-line rule for determining whether allegations of prior incidents involving other officers and different alleged victims are sufficient to make out a *Monell* claim. On the one hand, a plaintiff asserting a *Monell* claim must go beyond merely reciting a "litany of other police-misconduct cases" involving the same municipality.  *Pryor v. City of N.Y.*, No. 16-CV-8232, 2018 WL 4538904, at *4 (S.D.N.Y. Sept. 21, 2018) (quoting *Collins v. City of New York*, 923 F.Supp.2d 462, 479 (E.D.N.Y. 2013)).  *See also Ivery*, 284 F.Supp.3d at 444 (finding insufficient plaintiff's citation to "a handful of past cases in which similar allegations were made, but never proved").

But that does not mean that past incidents are irrelevant, or that they can never support a claim of municipal liability. A plaintiff asserting a *Monell* claim based on a municipality's ongoing practice or custom will typically need to rely on past cases involving police misconduct. *See Outlaw v. City of Hartford*, 884 F.3d 351, 380 (2d Cir. 2018) ("*Monell* liability, by its nature, will often turn on evidence concerning victims other than the plaintiffs and alleged misfeasors other than the individual defendants"). The question on a motion to dismiss is whether, assuming the truth of the plaintiffs' factual allegations, those past incidents give rise to a plausible claim of deliberate indifference on the part of the municipality to the types of constitutional violations alleged in the case before the court.

In making that determination, courts typically consider both the number of alleged prior incidents and the degree of similarity that they bear to the incident that gave rise to the lawsuit at bar. *See*, *e.g.*, *Scott v. City of Rochester*, No. 17-CV-6359, 2018 WL 4681626, at *5-*6 (W.D.N.Y. Sept. 28, 2018) (dismissing "deliberate indifference" claim against City where the alleged prior incidents were not similar to the incident in question, and dismissing "custom or usage" claim on the ground that a "single example of a police officer fabricating charges to hide an excessive use of force coupled with the allegations here simply cannot establish a 'persistent and widespread' custom that carries the force of law") (citing *Monell*, 436 U.S. at 691); *Pluma v. City of New York*, No. 13-cv-2017, 2015 WL 1623828, at *12 (S.D.N.Y. Mar. 31, 2015) (holding that a "handful of dissimilar incidents occurring over the course of more than a decade is too sparse to put the City on notice that the NYPD's training program produces officers who are likely to commit constitutional violations through their deployment of pepper spray").

In the case before me, plaintiffs have set forth allegations about six RPD officers who have allegedly used excessive force in the past, but never been disciplined for doing so. *See* Complaint ¶¶ 218-51. Those twelve incidents took place between July 15, 2001 and September 18, 2015.

Some of the incidents alleged are factually quite dissimilar from the incident that occurred here. For example, plaintiffs allege that on August 31, 2002, Officer Thomas Rodriguez, with other RPD officers, attacked a certain individual in Rochester, "by tacking [sic] him to the ground, shooting him with a TASER, punching, kicking, and beating him with night sticks," and that the man died as a result of his injuries. (Complaint ¶ 219.) That is a far cry from what happened here. In addition, plaintiffs have alleged no facts providing any background for that incident, so there is no way to gauge the extent to which any of the force used was reasonable. Obviously, in some circumstances, even lethal force may be justified.

Some of the alleged incidents, however, do bear some similarity to the one alleged in this case. For instance, plaintiffs allege that on May 12, 2011, Officer Mario Masic falsely arrested and assaulted Rochester resident Emily Good in retaliation for her making a video recording of RPD officers as they searched an African-American motorist's vehicle on the street in front of Good's home. Plaintiffs allege that the charges against Good were eventually dismissed, and that Masic was not reprimanded or otherwise disciplined for his actions. Complaint ¶¶ 237-38. The other incidents alleged fall at various points on the spectrum in terms of their similarity to the incident here, but in they all involve alleged uses of excessive force by RPD officers, who were not disciplined for their actions.

As stated, plaintiffs assert in the thirteenth cause of action that the City has been deliberately indifferent to RPD officers' use of excessive force, both in carrying out arrests and in non-arrest interactions with civilians. Plaintiffs allege that at the time of the incident giving rise to this suit, the RPD essentially had *no* standards governing officers' use of force. In other words, officers were given free rein to use force as they saw fit.

Given those allegations, the Court cannot simply disregard the allegations about prior incidents. If the claim is that the City and the RPD have routinely ignored officers' use of force, no matter *how* excessive or unwarranted, then the fact that some of the prior alleged incidents involved uses of force that were more egregious than what is alleged here is not dispositive.

In making this determination, the Court is mindful that this is not a motion for summary judgment. On a motion to dismiss, the Court must accept the truth of plaintiffs' factual allegations, and construe all reasonable inferences in their favor. Applying that standard, I conclude that plaintiffs' thirteenth claim should be allowed to proceed. *See Acquah v. City of Syracuse*, No. 18-CV-1378, 2019 WL 3975463, at *5 (N.D.N.Y. Aug. 22, 2019) (denying motion to dismiss *Monell* claim against city where plaintiff alleged five specific instances of excessive force by Syracuse police officers, which plausibly supported plaintiff's claim that city's deliberately indifferent failure to train, supervise, and discipline its officers caused the violation of his constitutional rights); *Keene v. City of Rochester*, No. 17-CV-6708, 2018 WL 1697486, at *4 (W.D.N.Y. Apr. 7, 2018) (finding that plaintiff had adequately alleged that there was a pattern of RPD officers engaging in unlawful, excessive uses of force, and that the City did not meaningfully respond to that misconduct, based on allegations of at least eight instances between 2002 and 2014 in which the City was aware that RPD officers had used excessive force

in detaining arrestees, but did not perform a meaningful investigation into those instances, and failed to discipline the officers); *Vann v. City of Rochester*, No. 18-cv-6464, 2019 WL 1331572, at *8 (W.D.N.Y. Mar. 25, 2019) (reaching similar conclusion based on allegations concerning sixteen prior incidents).

The fourteenth claim alleges that the City and RPD have created and maintained a custom and policy of wrongfully arresting people without probable cause. Plaintiffs allege a number of aspects in which those arrests are wrongful, such as: the use of false "cover" charges like disorderly conduct, trespass, resisting arrest, etc.; so-called "contempt of cop" arrests based on the arrestee's perceived lack of respect for the officer; and making arrests without probable cause, simply to meet the goals of temporary law-enforcement initiatives.

Plaintiffs also allege that the City's and RPD's policies in this regard proximately caused their injuries. In particular, plaintiffs allege that the arrests of plaintiffs were made in part to carry out an RPD policy then in effect, known as "Operation Cool Down," pursuant to which RPD officers were instructed to aggressively engage citizens in public areas, in an ostensible effort to deter crime and violence in Rochester. Complaint ¶¶ 312, 314.

As in the thirteenth cause of action, plaintiffs have alleged and rely upon other past incidents involving RPD officers. One such incident relates to a case filed in this Court, *Redd v. City of Rochester*, No. 15-CV-6049, which was ultimately settled pursuant to a stipulation of discontinuance. *See id.*, Dkt. #56. Plaintiffs also again cite the incident involving Officer Masic's arrest of Emily Good, and a May 1, 2013 arrest of Benny Warr, which is currently the subject of another lawsuit in this Court, *Warr v. Liberatore*, No. 13-CV-6508.

While the matter is not free from doubt, the Court will deny defendants' motion to dismiss this claim. The mere fact that lawsuits were filed in connection with these incidents is not in itself probative of the existence of a municipal custom or policy. *See Torres v. Vasta*, No. 18-CV-8706, 2019 WL 4640247, at *5 (S.D.N.Y. Sept. 24, 2019) ("in order for prior lawsuits to establish municipal liability under *Monell*, they must have resulted in an adjudication of liability") (citing *Alwan v. City of New York*, 311 F.Supp.3d 570, 584 (E.D.N.Y. 2018)).

But as with the excessive force claim, that does not mean that the underlying incidents themselves may not be considered in determining whether plaintiffs have adequately stated a claim. Again, this is not a motion for summary judgment, and accepting the truth of plaintiffs' allegations, I conclude that they have presented a facially viable *Monell* claim in their fourteenth cause of action.

It bears repeating that this decision is based on the relatively lenient standard applicable to Rule 12(b)(6) motions. It remains to be seen whether, after discovery, summary judgment may be appropriate. *See Vann*, 2019 WL 1331572, at *9 (stating that though "[t]he Court offers no opinion on the likelihood" that plaintiff would ultimately be able to prove his allegations, he had adequately alleged a longstanding, widespread practice of filing false charges and arresting individuals on trumped-up "cover charges," based on some of the same allegations set forth in the instant case).

## 2. Denial of the Right to a Fair Trial

In their fifteenth claim for relief, plaintiffs allege that by their actions, defendants Baker, Kelly and Hernandez denied plaintiffs their right to a fair trial. Plaintiffs allege that they did so by manufacturing false evidence and providing that fabricated evidence to prosecutors.

Defendants' initial memorandum of law does not explicitly address this claim, and in their response, plaintiffs assert that "[d]efendants have not moved to dismiss" this claim. (Dkt. #12-1 at 17.) In their reply, defendants state that they have done so implicitly, because they have addressed the paucity of the allegations underlying this claim.

To state a claim for denial of the constitutional right to a fair trial based on an officer's falsifying information, a plaintiff must allege that the officer created false information, the officer forwarded the false information to prosecutors, the false information was likely to influence a jury's decision, and that the plaintiff suffered a deprivation of life, liberty, or property as a result. *See Caravalho v. City of New York*, 732 Fed.Appx. 18, 24 (2d Cir. 2018); *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279-80 (2d Cir. 2016).

The information in question must be "both false and likely to influence a jury's decision." *Garnett*, 838 F.3d at 280. Statements made in charging instruments, such as a criminal complaint, can be actionable. *Marom v. City of New York*, No. 15 Civ. 2017, 2016 WL 5900217, at *1-3 (S.D.N.Y. July 29, 2016).

In this case, there was no trial. As explained above, either the charges were dismissed, or one or both plaintiffs pled to an ACD, but there is no suggestion by either side that any charges against either plaintiff proceeded to trial.

The case law indicates that a trial is not a prerequisite for a fair-trial claim. *Case v. City of New York*, __ F.Supp.3d __, 2019 WL 4747957, at *5 (S.D.N.Y. Sept. 30, 2019) (citing *Schiller v. City of New York*, No. 04 Civ. 10178, 2008 WL 200021, at *10 (S.D.N.Y. Jan. 23, 2008)). "Instead, where the plaintiff never proceeded to trial, the question is if the allegedly false information is material in the sense that it would likely influence the jury *if* it arrived at a jury." *Case*, 2019 WL 4747957, at *8 (internal quote and citation omitted). In addition, courts in this circuit have held that spending time in jail following an arrest, or having to attend court appearances occasioned by the arrest, constitutes a sufficient deprivation of liberty. *Case*, 2019 WL 4747957, at *5 (citing *Marom v. Blanco*, No. 15 Civ. 2017, 2019 WL 3338141, at *7 (S.D.N.Y. July 25, 2019)).[7]

As with plaintiffs' other claims, it remains to be seen whether plaintiffs will be able to prevail on this cause of action. But the complaint does allege that the officers essentially lied about the events immediately preceding plaintiffs' arrests, and that Colon was charged with a crime as a result. Accepting the truth of those allegations, the Court denies defendants' motion to dismiss this claim.

---

[7] There appears to be some question whether a guilty plea forecloses a fair-trial claim based on fabrication of evidence, particularly in light of the Supreme Court's recent decision in *McDonough v. Smith*, __ U.S. __, 139 S.Ct. 2149 (2019) (holding plaintiff "could not bring his fabricated evidence claim under § 1983 prior to the favorable termination of his prosecution"). But as explained above, it appears that the charges against plaintiffs were either dismissed outright, or resolved through an ACD. As another district court has recently held, I find that such an outcome does not bar plaintiffs' claim. *See Ross v. City of New York*, No. 17-CV-3505, 2019 WL 4805147, at *7-*8 (E.D.N.Y. Sept. 30, 2019) (distinguishing *McDonough* and concluding that "an ACD does not preclude Plaintiff's fair trial claim").

### 3. Supervisory Liability

In their seventeenth cause of action, plaintiffs assert a claim under § 1983 against the City and Sergeant Wheeler, based on supervisory liability.  Complaint ¶ 338.

With respect to Wheeler, this claim requires, at this stage, plausible allegations of her personal involvement in the underlying constitutional violations.

To state a claim under § 1983 against a supervisory official, "a plaintiff must allege that individual's personal involvement in the alleged constitutional violation; it is not enough to assert that the defendant is a link in the chain of command."  *Dublino v. Biegaj*, No. 19-CV-6269, 2019 WL 4195124, at *2 (W.D.N.Y. Sept. 3, 2019) (citing *McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004)).

A supervisory official can be found to have been personally involved in an alleged constitutional violation in a number of ways, including failing to remedy the wrong after being informed of the violation, and approving or ratifying the action that created the violation.  A supervisory official may also be held liable if she created a policy or custom under which unconstitutional practices occurred, or was grossly negligent in supervising subordinates who committed the wrongful acts.  *See Bloodywone v. Bellnier*, 778 Fed.Appx. 52, 53 (2d Cir. 2019); *Brandon v. Kinter*, 938 F.3d 21, 36 (2d Cir. 2019).  *See also Mullinax v. McKeithen*, 570 Fed.Appx. 887, 889 (11th Cir. 2014) (affirming denial of sheriff's motion for summary judgment where  the evidence, viewed in the light most favorable to plaintiff, would permit a reasonable jury to conclude that sheriff "was personally involved in, ordered, or ratified Mr. Mullinax's arrest and detention").

In the case at bar, plaintiffs allege that Wheeler showed up shortly after plaintiffs had been taken into custody, spoke to the officers and to plaintiffs, and then "approved the arrests" of plaintiffs. Complaint ¶ 71. In my view, that is sufficient to state a claim against Wheeler. Drawing all reasonable inferences in plaintiffs' favor, plaintiffs have plausibly alleged that Wheeler understood the circumstances leading up to plaintiffs' arrests, and ratified those arrests. As with many of plaintiffs' claims, that may not hold up to scrutiny following discovery, but at this point it is sufficient to state a claim against Wheeler.

To the extent that this claim is asserted against the City, it is duplicative of plaintiffs' *Monell* claim. It is based on an alleged failure to train, supervise, and discipline RPD officers. Though there may be a distinction between the City's alleged past failures in that regard, leading up to this incident, and the City's alleged failure to remedy *this* violation or to discipline the officers involved, all of plaintiffs' claims against the City are subsumed in their *Monell* claims. Plaintiffs' supervisory-liability claim against the City is therefore dismissed.

## IX. First Claim for Relief

Though it might seem odd to save discussion of plaintiffs' first claim for relief until now, the Court does so because the first claim is little more than a summary of the federal claims that follow. The first claim simply alleges that plaintiffs' federally protected rights were violated, as set forth in the later-stated claims. As such, it is both multiplicitous and duplicitous. It is not so much a standalone claim as a summary of what is to follow. The first claim is therefore dismissed.

## CONCLUSION

Defendants' motion to dismiss the complaint (Dkt. #4) is granted in part and denied in part.

Defendants' motion is granted as to plaintiffs' first, twelfth, and sixteenth claims, and those claims are dismissed.

Defendants' motion is granted in part as to plaintiffs' seventeenth cause of action. That claim is dismissed as to the City of Rochester.

In all other respects, defendants' motion is denied.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
December 6, 2019.